No. 99-134

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 58

299 Mont. 13

996 P. 2d 386

IN RE THE MARRIAGE OF

THOMAS ANTHONY McKENNA,

Petitioner and Appellant,

and

SALLY JO McKENNA,

Respondent and Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Susan P. Watters, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

George T. Radovich, Billings, Montana

For Respondent:

Damon L. Gannett, Gannett Law Firm, Billings, Montana

Submitted on Briefs: September 2, 1999

Decided: March 9, 2000

Filed:

_____

Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

¶1. Thomas Anthony McKenna (Thomas) appeals from the Findings of Fact and Conclusions of Law of the Thirteenth Judicial District Court, Yellowstone County, awarding primary residential custody of the parties' minor child to Sally Jo McKenna (Sally). We affirm.

¶2. We are asked to address the question of whether the District Court's decision awarding Sally primary custody of the child during the school year was an abuse of discretion.

Factual and Procedural History

¶3. Thomas and Sally were married on September 1, 1990, in Tulare, California. They had one child, Kirsten Marie McKenna (Kirsten), during their marriage. Kirsten was born on December 28, 1993. The parties separated on May 5, 1997, and have lived apart since that time. This case was initiated when Thomas filed a Petition for Dissolution of his marriage to Sally on June 12, 1997. The parties then entered into a Partial Marital and Property Settlement Agreement governing the division of marital property and the allocation of marital liabilities on October 10, 1997. This agreement was filed with the court.

¶4. Since separating, Thomas and Sally have mutually agreed to a shared custody arrangement. Kirsten's time has been alternated between the parties so as to provide each parent with approximately one-half of the child's time. The parties' Partial Marital and Property Settlement Agreement contained temporary provisions for the continuation of joint custody of Kirsten pending a final decree of dissolution. The parties further informed

the District Court that they desired that the court incorporate all of the terms of their marital property agreement, except the provisions for the equal allocation of Kirsten's time between the parents, into the final decree of dissolution.

¶5. Thus, the parties stipulated to a custody investigation by the Yellowstone County Court Services pertaining to the allocation of Kirsten's time. The custody investigation was performed by Sherri Kenck (Kenck), Court Services Family Relations Specialist. Kenck's completed custody investigation, dated January 28, 1998, was submitted to the District Court and received into evidence. In her investigation, Kenck recommended in pertinent part that Thomas and Sally share joint parenting time. It is recommended that the current schedule remain in place with some provisions made to provide Kirsten with continuity and stability of care. When Kirsten starts school, it is recommended that she return to her mother's home to sleep on the evenings she is with her father. A suggested return time would be 7:30. This will allow Kirsten to have a sense of continuity as she prepares for school each day, but will allow the current schedule to remain in place. During the summer months, it is recommended that the overnight weekday visits resume.

¶6. Although the parties initially represented to the District Court that they were willing to accept Kenck's recommendations, a disagreement subsequently developed concerning when the cessation of overnight times with Thomas during weekdays would occur. On October 30, 1998, a hearing was held on the matter of allocating Kirsten's time among the parents. In addition to Kenck, several other experts testified at the hearing, including: Kate Zednick, Licensed Clinical Social Worker (Zednick); Jim Paulson, Licensed Clinical Social Worker (Paulson); and Dr. F. Tom Peterson, Licensed Clinical Psychologist (Dr. Peterson).

¶7. At the hearing, Kenck testified that although both parents were very nurturing and close to Kirsten, there were some relationship difficulties between the parents which posed an impediment to Kirsten's long-term adjustment to her parents' divorce. In particular, Kenck observed that communications between Thomas and Sally were marked by frustration, anger, arguing, and the inability to reach agreement and make co-parenting decisions relative to Kirsten. Children of Kirsten's age are particularly susceptible to such a relationship between their parents, according to Kenck, and Kirsten had been exhibiting both physical and emotional reactions to this dynamic between Thomas and Sally, including some anger, aggressiveness, tearfulness, and sad feelings.

¶8. Thus, Kenck recommended that the equal allocation of time between the parents

continue until Kirsten started attending kindergarten in the fall of 1999, when Kenck recommended that Kirsten live primarily with Sally. Kenck was of the opinion that it would be in Kirsten's best interest to have one primary home with stability and continuity of care during school, which would help to reduce parental conflict. The basis for Kenck's recommendation was that, given Kirsten's precocious personality, Sally was a better parent for Kirsten at that time. Specifically, there was a clearer parent-child separation and interaction between Sally and Kirsten; Sally was better able to provide discipline and structure for Kirsten and Kirsten more readily accepted Sally's role as parent. In contrast, Thomas and Kirsten shared what Kenck described as an "emotionally enmeshed" relationship in which there is not a clear role separation between parent and child and in which an intelligent child like Kirsten can effectively end up parenting the parent.

¶9.Zednick, who also works as a psycho-therapist in private practice, interviewed Thomas, Sally, and Kirsten several times prior to the hearing. Expressing concern about Kirsten's adjustment to the divorce, Zednick agreed with the recommendations in Kenck's custody investigation. Zednick felt that once Kirsten began to attend school, it would be important for her to have "structure, predictability, and consistency." A steady routine was more important with a child like Kirsten, according to Zednick, because Kirsten is such "an incredibly bright, incredibly strong-willed child" who can easily push parental limits. Zednick also noted that Thomas had delivered Kirsten late to her day-care provider on several occasions and had exhibited an extremely difficult time emotionally separating from Kirsten when he left her at the day-care center.

¶10.Paulson, who is also employed as a private practice clinician, was Thomas' therapist beginning in May of 1997. Although Paulson had expressed concern about Thomas' emotional enmeshment with Kirsten about six months prior to the hearing, he testified that, in his opinion, Thomas' enmeshment issues had been successfully addressed through therapy. Paulson felt that an equal balance of power between the two parents should work and, therefore, he recommended the continuation of equal sharing of Kirsten's time by the parties. He saw no reason for changing such an arrangement once Kirsten began school. However, Paulson had never met with Sally nor observed the interpersonal dynamics of Sally and Kirsten when together.

¶11.Dr. Peterson had met with Kirsten several times prior to the hearing in order to address issues dealing with the separation of the parties. Dr. Peterson stated that Kirsten handles a shared custody arrangement as well as any child could. He did not believe that having Kirsten spend two additional nights at her mother's house during the school week

would assist Kirsten in dealing with the divorce. Dr. Peterson had, however, observed evidence of enmeshment in the relationship between Thomas and Kirsten, including "mini-parenting behavior." Dr. Peterson had only minimal contact with collateral sources of information pertaining to Kirsten and the parties, nor had he been asked to address the issue of an appropriate custody arrangement for Kirsten.

¶12. Thomas and Sally both testified at the hearing as well. Thomas expressed desire to continue the current shared custody arrangement, while Sally asked the court to adopt Kenck's recommended custody arrangement. Thomas was of the opinion that he and Sally could work out any co-parenting decisions relative to Kirsten with little conflict.

## Discussion

¶13. Was the District Court's custody decision an abuse of discretion?

¶14. We review a custody determination to determine whether the findings of fact upon which the district court relied in rendering its decision are clearly erroneous. In re Marriage of Baer, 1998 MT 29, ¶ 18, 287 Mont. 322, ¶ 18, 954 P.2d 1125, ¶ 18. Where the findings are supported by substantial credible evidence, this Court will affirm the custody decision unless it is shown that the trial court committed a clear abuse of discretion. Marriage of Baer, ¶ 18.

¶15. In a marriage dissolution proceeding, the district court is required to determine child custody matters in accordance with the best interest of the child. See § 40-4-212, MCA. While the court must consider several statutory factors in determining the child's best interest pursuant to § 40-4-212, MCA, it need not make specific findings pertaining to each factor. Marriage of Baer, ¶ 19 (citing In re Marriage of DeWitt (1995), 273 Mont. 513, 516, 905 P.2d 1084, 1086; In re Marriage of Saylor (1988), 232 Mont. 294, 297-98, 756 P.2d 1149, 1151).

¶16. Thomas claims that the District Court endorsed the expert views of Kenck and Zednick while disregarding those of Paulson and Dr. Peterson in granting Sally primary residential custody of Kirsten. According to Thomas, since the court's findings are not supported by substantial credible evidence, the custody decision is therefore clearly erroneous. We disagree. Here, the District Court clearly addressed the statutory guidelines, and its factual findings show that it carefully considered the opinions of all four experts in rendering its custody decision.

¶17.While we acknowledge that the record shows that both Thomas and Sally are good parents and that both Paulson and Dr. Peterson expressed the opinion that the shared custody arrangement could work, it is not this Court's role to second-guess the fact-finding function of the District Court. Where there are conflicts in the testimony, it is the function of the trier of fact to resolve those conflicts. In re Marriage of Mitchell (1991), 248 Mont. 105, 108, 809 P.2d 582, 584. We will not substitute our judgment for that of the trier of fact as the trial court is in a better position than this Court to resolve child custody issues. In re Marriage of Anderson (1993), 260 Mont. 246, 252, 859 P.2d 451, 454.

¶18.We hold that there is substantial credible evidence supporting the District Court's determination that it is in Kirsten's best interest to adopt the recommendations made by Kenck in her written custody investigation. Particularly, there is a wealth of evidence supporting the court's finding of the parties' "inability to agree" on important co-parenting decisions regarding Kirsten and school, including whether or not to permit weekday overnight visits with Thomas during the school year, which school Kirsten will attend, and when Kirsten should begin school (kindergarten or first grade). There is also abundant evidence supporting the District Court's findings that Kirsten needs a stable home environment upon beginning school, and that Sally would be better able to provide that sort of structured environment than Thomas.

¶19.Nor are the District Court's findings otherwise clearly erroneous. There is no indication that the court misapprehended the effect of the evidence or committed a clear and definite mistake in awarding Sally primary residential custody of the child during the school year. See In re Marriage of Schmitz (1992), 255 Mont. 159, 165, 841 P.2d 496, 500. A trial court's custody decision must be presumed correct and will be upheld unless a clear abuse of discretion is shown. In re Marriage of Ryan (1986), 222 Mont. 188, 191, 720 P.2d 691, 693. We hold that Thomas has failed to show that the District Court clearly abused its discretion. Where, as here, the trial court has properly considered the factors set forth in § 40-4-212, MCA, has relied on professional assessments of the child's best interest, and has made an "independent analysis of the facts of the case to make its custody decision," there is no clear abuse of discretion. See Marriage of Anderson, 260 Mont. at 253, 859 P.2d at 455-56.

¶20.Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART