No. 00-446

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 12N

IN THE MATTER OF THE MARRIAGE OF

KARI LYNN DANBROOK,

Petitioner and Appellant,

and

LLOYD WESLEY DANBROOK,

Respondent.

APPEAL FROM: District Court of the Twelfth Judicial District,

In and for the County of Chouteau,

The Honorable John Warner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. C. Weingartner, Attorney at Law, Helena, Montana

For Respondent:

Floyd D. Corder, Corder & Allen, Great Falls, Montana

Submitted on Briefs: December 14, 2000
Decided: February 15, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The Appellant, Kari Lynn Danbrook, filed a Petition for Dissolution of her marriage to Lloyd Wesley Danbrook in the District Court for the Twelfth Judicial District in Chouteau County. Following trial, the District Court issued a decree which dissolved the marriage, established a parenting plan, and distributed the marital estate. Kari appeals from the findings and decree of the District Court. We affirm the decree of the District Court.

¶3 Kari presents the following issues on appeal:

¶4 1. Did the District Court err when it awarded residential custody of the children to the father, Lloyd Danbrook?

¶5 2. Did the District Court err in its distribution of the marital estate?

## FACTUAL BACKGROUND

¶6 Kari and Lloyd Danbrook were married March 10, 1990, in Chouteau County, Montana. After the marriage, they lived near Geraldine, Montana, where Lloyd worked on the family farm. Kari and Lloyd had two children during their marriage: Zac Danbrook, born February 24, 1993, and Chais Danbrook, born August 22, 1994. Zac and Chais have spent the majority of their young lives on the farm north of Geraldine. Both Zac and Chais are enrolled in the Geraldine school system.

¶7 In 1997, the couple separated and Lloyd filed a Petition for Dissolution. However, the couple soon reconciled and the initial dissolution action was dismissed in August 1997. On December 25, 1998, Kari left their home near Geraldine and returned to Helena,

Montana to live closer to her family and friends. On December 30, 1998, Kari filed a Petition for Dissolution of Marriage in the District Court for the Twelfth Judicial District in Chouteau County. Kari also filed an affidavit in support of her *ex parte* motion for an interim parenting plan and child support. In her affidavit, Kari alleged that she was the victim of spousal abuse and that the children should not be placed in the custody of an abusive parent.

¶8 On March 2, 1999, the District Court appointed a *guardian ad litem* to represent the interests of the children. After interviewing numerous individuals including social workers at the Hi-Line Help for Abused Spouses center, the Danbrooks, the children, relatives, teachers, friends, and counselors, the *guardian ad litem* filed a report on July 27, 1999. The report recommended that the children continue to reside in the familiar environment of Geraldine with Lloyd and have frequent contact with their mother in Helena on weekends, vacations, and summer holidays. However, the *guardian ad litem* also concluded that the children should be placed primarily with Kari in Helena in the event that the District Court determined that Lloyd physically and emotionally abused his spouse.

¶9 Both sides presented evidence concerning Kari's allegations of abuse at trial. Kari testified that Lloyd had physically and emotionally abused her on several occasions. Kari alleged that in March 1997 Lloyd "picked me up by the face," which caused bruising. Kari called her father and the Chouteau County Sheriff following this incident. Both Kari's father and her friend Lisa Villamor testified that they saw bruises on Kari's face. However, no criminal charges were filed. The District Court ordered that the parents and the children be evaluated by a professional. Several experts concluded that Kari was the victim of domestic abuse.

¶10 Lloyd Danbrook testified that he had not physically or emotionally abused Kari. The *guardian ad litem* testified that he interviewed Dr. William Taylor, who counseled Lloyd and Kari during their first separation. Dr. Taylor did not believe that Kari was the victim of domestic abuse. The *guardian ad litem* further testified that Dr. Marcus Johnson, Kari's former treating physician, believed that Kari suffered from delusions that she was the victim of domestic abuse.

¶11 Following trial, the District Court entered a Dissolution Decree and Proposed Findings of Fact and Conclusions of Law on February 16, 2000. In a memorandum attached to the Findings of Fact and Conclusion of Law, the District Court focused on the

allegations of spousal abuse. The District Court concluded that both parties probably mistreated each other to the detriment of the children, but that those witnesses who expressed the opinion that abuse occurred based their opinions upon unverified allegations of abuse. The decree included a parenting plan which established joint custody of the children. Neither parent was designated the "primary" custodian, although the judgment designated Lloyd as the parent with whom the children would reside. The decree also divided the marital estate. Lloyd was awarded inherited and gifted property while Kari received $17,000 to equalize the property distribution. Neither party received a maintenance award. Kari now appeals from the findings and decree of the District Court.

## STANDARD OF REVIEW

¶12 We review a custody determination to determine whether the findings of fact upon which the District Court relied in rendering its decision are clearly erroneous. *In re Marriage of McKenna*, 2000 MT 58, ¶ 14, 299 Mont. 13, ¶ 14, 996 P.2d 386, ¶ 14. Where the findings are not clearly erroneous, this Court will affirm the custody decision unless it is shown that the trial court committed a clear abuse of discretion. *McKenna*, ¶ 14.

## DISCUSSION

## ISSUE 1

¶13 Did the District Court err when it awarded residential custody of the children to the father, Lloyd Danbrook?

¶14 The thrust of Kari's argument on appeal is that the District Court was clearly erroneous when it found no spousal abuse based simply on the testimony of Lloyd. Because the District Court should have found that spousal abuse occurred, Kari argues that the District Court abused its discretion when it awarded residential custody of the children to Lloyd.

¶15 Kari's first contention is that the District Court erred when it ignored the testimony about bruises on Kari's body and when it ignored testimony of expert witnesses who concluded that Kari was the victim of spousal abuse. Kari further argues that the District Court should have ignored the report of the *guardian ad litem* because the report was based on an inadequate and incomplete investigation.

¶16 Lloyd responds by noting that his testimony at trial refuted accusations of abuse.

Furthermore, the *guardian ad litem* testified that Dr. Taylor did not believe Kari had been abused. Lloyd argues that the *guardian ad litem* submitted a detailed report after conducting extensive interviews with numerous witnesses and that the District Court was therefore justified in relying on the report. Finally, Lloyd points out that there is substantial evidence in the record that Lloyd is a good father to the children and that they do well in his care.

¶17 While we share the District Court's concern that allegations of domestic abuse be taken seriously, we also recognize that it is not the function of this Court to overturn the factual findings of the District Court when those findings are supported by substantial credible evidence. The lodestar of the District Court's analysis in child custody matters like this one is to rule in accordance with the best interests of the child. *See* § 40-4-212, MCA. Kari's argument on appeal is essentially that the District Court ignored the testimony of certain experts that abuse had occurred. However, upon a thorough review of the record, we do not find that the District Court disregarded the testimony of any witness. Rather, the District Court determined the weight and credibility of conflicting evidence and concluded that, although Kari and Lloyd probably mistreated each other, the best interests of the children were served by granting residential custody to Lloyd and allowing the children to continue to attend school in Geraldine. As we recently stated in *McKenna*:

> [I]t is not this Court's role to second guess the fact finding function of the District Court. Where there are conflicts in the testimony, it is the function of the trier of fact to resolve those conflicts. We will not substitute our judgment for that of the trier of fact as the trial court is in a better position than this Court to resolve child custody issues.

*McKenna, ¶ 17 (citations omitted.)*

¶18 Therefore, we conclude that the findings of fact upon which the District Court relied in rendering its decision are supported by substantial credible evidence and are not clearly erroneous. We further conclude that the District Court did not abuse its discretion when it granted residential custody of the children to Lloyd Danbrook. Accordingly, we affirm the judgment of the District Court.

## ISSUE 2

¶19 Did the District Court err in its distribution of the marital estate?

¶20 The Appellant attacks the findings, conclusions, and decree entered by the District Court which relate to the distribution of the marital estate. Kari contends that the District Court erred when it determined the values of the family home and a 1994 Ford pickup Kari received pursuant to the decree. She further argues that Lloyd "got income producing property" while she received "income consuming property." This argument appears to be based on her assertion that Lloyd received additional gifted and inherited property during the marriage which should have been included in the marital estate.

¶21 The district court is obligated to equitably apportion the marital property. *In re Marriage of Danelson* (1992), 253 Mont. 310, 317, 833 P.2d 215, 220. "When there is a dispute over property in a marriage dissolution, the district court may assign any value that is within the range of values presented into evidence." *In re Marriage of Taylor* (1993), 257 Mont. 122, 127, 848 P.2d 478, 481. Although Kari did not have the home appraised, her proposed findings valued the home at between $60,000 and $100,000. The District Court valued the home at $75,000, a reasonable amount which clearly falls within the range of values presented as evidence.

¶22 At trial, Kari estimated that the value of the 1994 Ford pickup was $15,000. Lloyd estimated its value at $16,000. The District Court valued the truck at $15,500. The district court is free to adopt any reasonable valuation of the marital property which is supported by the record. *In re Marriage of Robinson* (1994), 269 Mont. 293, 296, 888 P.2d 895, 897. Here, the District Court's valuation of the Ford pickup truck was reasonable and supported by the record. The unsupported assertion that Kari was forced to sell the truck for $8,000 has no bearing on the District Court's division of marital property.

¶23 Kari also questions the District Court's conclusion that Lloyd's gifted and inherited property should not be considered as part of the marital estate. There is no dispute that Lloyd received gifted property from his grandmother in December of 1997 and February of 1998, and inherited property from his grandfather in December of 1997 and January 1998. While Lloyd acquired the property in question before the parties separated in December 1998, there is no evidence that Kari made any contribution to the preservation or appreciation of the gifted and inherited property. As we stated in *Smith*: "[t]he court cannot distribute to the non-acquiring spouse property acquired prior to the marriage or acquired by gift, bequest, devise, or descent when there is no evidence that the spouse made any contribution to those assets in any form." *In re Marriage of Smith* (1994), 264 Mont. 306, 312, 871 P.2d 884, 888. Our holding in *Smith* reflects the requirements of § 40-4-202, MCA, which provides in pertinent part:

In dividing property acquired ... by gift, bequest, devise, or descent; ...the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated that maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

¶24 We therefore conclude that the District Court did not abuse its discretion when it valued and distributed the marital property. The District Court assigned reasonable values to the disputed property based on evidence presented at trial. Consequently, we affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART