No. 01-717

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 147N

IN RE THE MARRIAGE OF

KIMBERLY ANN KINS DIXON,

Petitioner and Respondent,

and

MICHAEL ARTHUR DIXON,

Respondent and Appellant.

APPEAL FROM: District Court of the Second Judicial District,
In and For the County of Silver Bow,
Honorable Kurt Krueger, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Patrick D. McGee and Francis P. McGee, Attorneys at Law, Butte, Montana

For Respondent:

Mollie A. Maffei, Maffei Law Firm, PLLC, Butte, Montana

David L. Vicevich, Attorney at Law, Butte, Montana

Submitted on Briefs: March 14, 2002

Decided: June 27, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph (3) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Michael A. Dixon (Michael) appeals from the Second Judicial District Court's findings of fact, conclusions of law and order. At issue are the District Court's valuation and distribution of the marital estate, designation of Kimberly Ann Kins Dixon (Kim) as residential custodian and child support order. We affirm.

¶3 We re-state the issues on appeal as follows:

¶4 (1) Did the District Court err in conducting dissolution proceedings and entering a final decree after Michael failed to file a responsive pleading?

¶5 (2) Did the District Court err in valuing and distributing the marital estate?

¶6 (3) Did the District Court err in designating Kim as residential custodian of Junior?

¶7 (4) Did the District Court err in its determination of child support?

FACTUAL AND PROCEDURAL BACKGROUND

¶8 Michael and Kim were married on May 25, 1985. They have two minor children, Kayla and Michael (Junior).

2

¶9 Michael and Kim separated in August 1995. In 1997, Michael petitioned for dissolution and the parties, Kim without the benefit of counsel, signed a property settlement agreement. According to this agreement, if Michael agreed to co-sign a home equity loan in the amount of $32,000 for Kim, she would agree to forgo any proceeds from Michael's Thrift Savings retirement account. However, the agreement was never filed with the District Court, and the petition for dissolution was ultimately dismissed. Kim filed a petition for dissolution three years later on December 7, 2000.

¶10 The parties acquired both assets and debts during their marriage and five-year separation. During the marriage, the parties purchased a home with a fair market value of $73,500 as assessed by Silver Bow County for property taxes. The home had an outstanding mortgage of $36,000 while the parties were married. Michael, a United States postal employee, contributed to a Thrift Savings retirement account valued at approximately $86,047, and a second pension plan totaling $3,900, as valued at the time of the parties' dissolution. Kim, a high school teacher, contributed to a teachers retirement account valued a $11,160 at the time of dissolution. She also had a Prudential Life Account valued at $7,000. Michael purchased a Kawasaki 4-wheeler for $5000. Kim purchased twelve condom vending machines for between $5000 and $10,000. Kim incurred a credit card debt of approximately $30,000 in a failed attempt to establish a business.

¶11 During the parties' separation, Michael purchased a 2001 Ford F-250 truck worth approximately $32,000, with an equity value of

Comment [COMMENT3]: Tr 5
Comment [COMMENT4]: Tr 8
Comment [COMMENT5]: Tr 8
Comment [COMMENT6]: Tr 68
Comment [COMMENT7]: Tr 7

approximately $26,000 at the time of dissolution. Kim leased a Ford Ranger truck for $310 per month. She cashed out her Prudential Life account, and Michael was paid $4,500. Kim obtained a home equity loan in the amount of $32,000 with which she paid off several of her credit card debts. Michael co-signed the loan. Subsequently, Kim accumulated over $40,000 in credit card debt, more than half of which constituted late fees and accumulated interest. The parties filed married joint tax returns throughout this time.

¶12 During the separation, the two minor children primarily resided with Kim in the family home and Michael maintained a flexible parenting schedule with few overnight visits. In lieu of child support, Michael paid the house payment of approximately $490 per month.

¶13 After Kim filed a petition for dissolution, Michael filed a motion to dismiss. The District Court denied the motion and ordered Michael to respond to the petition within twenty days. Michael did not file a responsive pleading. However, he otherwise participated in the dissolution proceedings.

¶14 Following trial, the court issued its findings of fact, conclusions of law and order. The Court valued the parties' marital estate at the time of the dissolution. It awarded Kim all equity in the family home totaling $11,742; the leased truck; the teachers retirement plan; $4,500 from the distribution of her Prudential Life Account; and $30,000 from Michael's Thrift Savings retirement account to be used to pay her outstanding credit card

4

debt. The court ordered Kim responsible for both home mortgages. It also ordered her to "do whatever possible" to remove Michael's name from the home mortgages and credit cards.

¶15 Regarding the children, the court found both parents fit. It designated Kim as the residential custodial parent and issued a parenting plan giving Michael liberal parenting time. The parenting plan, with a few exceptions, mirrored the arrangement the parties followed during their separation. The court ordered Michael to pay $340 per month child support beginning in June 2001, and it ordered him to pay back support in the amount of $500 per month for March through May 2001.

¶16 Michael appeals the District Court's valuation and distribution of the marital estate, designation of Kim as residential custodian of Junior and calculation of child support.

DISCUSSION

¶17 (1) Did the District Court err in conducting dissolution proceedings and entering a final decree after Michael failed to file a responsive pleading?

¶18 Michael argues that because he failed to file a responsive pleading to Kim's petition for dissolution, the Court should treat this case as if the pleading had been filed or declare the trial a nullity and remand for a responsive pleading. He notes that Kim did not file a motion for default judgment upon his failure to respond to her petition and admits otherwise participating in the dissolution proceedings, including a settlement conference and trial.

5

¶19 Michael and Kim agree that under Rule 55(a), M.R.Civ.P., governing entry of default judgments, Michael "otherwise defended" his position in this case. Kim also argues that Michael did not move the District Court to reconsider or move for a new trial on the grounds that he did not file a responsive pleading, and, as such, the court did not exceed its jurisdiction in hearing the matter.

¶20 We conclude that the District Court properly conducted dissolution proceedings and entered a final decree despite Michael's failure to file a responsive pleading. In so concluding, we note that Michael did not raise this issue in the District Court. We also note that Kim did not file a motion for entry of default judgment under Rule 55(a), M.R.Civ.P., and, even if she had, the motion would have been meritless in light of Michael's active participation in the dissolution proceedings. *See Klock v. Town of Cascade* (1997), 284 Mont. 167, 172-73, 943 P.2d 1262, 1265-66 (motion for default judgment properly denied when defendants failed to file an answer to a complaint but filed a motion to dismiss and a motion for summary judgment). At this point, Michael's personal attempt to sanction himself is both untimely and unnecessary.

¶21 (2) Did the District Court err in valuing and distributing the marital estate?

¶22 We review the division of marital property by a district court to determine whether the findings upon which the district court relied are clearly erroneous. If the findings are not clearly

erroneous, we will affirm the distribution of property unless the district court abused its discretion. The test for abuse of discretion in a dissolution proceeding is "whether the district court acted arbitrarily without employment of conscientious judgment" or whether the district court "exceeded the bounds of reason resulting in substantial injustice." *In re Marriage of Gochanour*, 2000 MT 156, ¶ 15, 300 Mont. 155, ¶ 15, 4 P.3d 643, ¶ 15 (citing *In re Marriage of Engen*, 1998 MT 153, ¶ 26, 289 Mont. 299, ¶ 26, 961 P.2d 738, ¶ 26).

¶23 We review a district court's conclusions of law to determine whether the conclusions are correct. *Gochanour*, ¶ 16 (citation omitted).

¶24 Michael raises the following challenges to the District Court's valuation and distribution of marital property. With regard to each of them, we hold that the District Court employed conscientious judgment, acted reasonably and correctly interpreted applicable law.

7

*1997 Property Settlement Agreement*

¶25 Michael first contends that the District Court erred when refusing to consider the parties' 1997 property settlement agreement. At trial, Michael attempted to testify that, pursuant to this agreement, Kim agreed to "give" Michael his entire Thrift Savings retirement account if he co-signed on a home equity loan. Kim objected on relevancy grounds, and the District Court sustained the objection since the action which gave rise to the settlement agreement had been dismissed.

¶26 Michael argues that a district court is required to abide by the terms of a written settlement agreement unless it is unconscionable under § 40-4-201, MCA. Kim emphasizes that the District Court allowed testimony regarding the parties' previous settlement agreement but appropriately deemed it irrelevant.

¶27 We hold that the District Court did not err in declining to consider a property settlement agreement which Kim executed without the benefit of counsel in an action which was ultimately dismissed. A District Court is bound by parties' settlement agreements "attendant upon their separation or the dissolution of their marriage." Section 40-4-201(1), MCA. Michael's and Kim's 1997 settlement agreement was not "attendant" upon the action at hand. It did not have a tendency to make the existence of any fact of consequence to the present dissolution action more or less probable. *See* Rule 401, M.R.Civ.P. The District Court did not err in concluding that the agreement was irrelevant and it was not bound by it under § 40-4-201, MCA.

8

*Valuation of Marital Estate*

¶28  Michael also argues that the District Court erred in valuing the entire marital estate at the time of the parties' dissolution rather than valuing certain assets at the time of the parties' separation in 1995.  Citing *In re Marriage of Wagner* (1984), 208 Mont. 369, 679 P.2d 753, and its progeny holding that in unique circumstances a marital estate should be valued at the time of separation to avoid injustice, Michael claims the court's inclusion of Kim's substantial post-separation credit card debt in the marital estate was clear error.  He also insists that Kim's and his trucks and contributions to their retirement accounts during their separation should not have been included in the marital estate.

¶29  Kim disputes the applicability of *Wagner* in this case.  She maintains that it is more important to achieve an equitable apportionment of property than to designate the moment at which a court should value property.  Kim argues that while she was primarily responsible for the needs of the parties' children during the separation, Michael lived at his parents' home and was able to contribute more to his retirement plan.

¶30  The well-settled rule in Montana is that absent unique circumstances, a marital estate should be valued at or near the time of dissolution.  *In re Marriage of Lopez* (1992), 255 Mont. 238, 244, 841 P.2d 1122, 1125.  Yet, the appropriate time for valuing the marital estate cannot always be tied to a specific time or event in the dissolution process and the District Court is required to exercise discretion in determining the appropriate time

for valuation. *Lopez*, 255 Mont. at 244, 841 P.2d at 1125 (citing *Wagner*, 208 Mont. at 377, 679 P.2d at 757). At times, valuation at or near the time of the dissolution may cause an injustice due to the nature of the assets or the course of conduct of the parties. *Lopez*, 255 Mont. at 244, 841 P.2d at 1125-26 (citing *In re Marriage of Gebhardt* (1989), 240 Mont. 165, 783 P.2d 400).

¶31 We hold that the unique circumstances found in *Wagner* and *Gebhardt* are not present in this case. In *Wagner,* the wife, through impressive business acumen, substantially increased her ranch assets during the parties' separation while the husband, through mismanagement, decreased his assets. In *Gebhardt,* the husband made personal investment decisions encumbering farm property during separation. Here, Kim did not make poor investment decisions. Rather, she testified that she used her credit card to buy necessaries such as school clothes and groceries as well as to pay household bills and make ends meet on a limited budget.

¶32 Moreover, it is well established in this state and other states that retirement benefits are part of the marital estate. *In re Marriage of Rolfe* (1985), 216 Mont. 39, 46, 699 P.2d 79, 83. The Court was not required to deprive Kim of an equitable share of Michael's retirement because she acquired debt in obtaining household necessaries after the parties' separation. This is especially true since during the same period of time, Michael testified that he lived with his parents at reduced rent, purchased a $32,000 truck, nearly doubled his retirement account, and enjoyed the tax advantage of filing joint returns.

10

¶33 Given the facts of this case, we hold that the District Court did not err in valuing the marital estate at or near the time of the parties' dissolution.

*Failure to Include Marital Asset*

¶34  Michael next argues that the District Court erred by failing to include Kim's condom vending machines as an asset in the marital estate.  Generally, if contested evidence is presented to the trial court regarding the existence or valuation of a marital asset and no findings are made regarding the asset, the district court has abused its discretion.  *In re Marriage of Larson* (1982), 200 Mont. 134, 139, 649 P.2d 1351, 1354.  Here, the District Court was presented with speculative evidence regarding the purchase value of the condom machines, and, as Michael admits, no evidence regarding the current value of the machines or the amount of income or loss they produce.  Accordingly, we hold that the District Court did not err by failing to include the condom vending machines as a marital asset.

*Value of Family Home*

¶35  Finally, Michael challenges the District Court's valuation of the family home.  He argues that a loan appraisal valued the home at $88,500 while the court valued it at $73,500 pursuant to a property tax assessment.

¶36  The District Court "has broad discretion in determining the value of property in a dissolution. . . .  As long as the valuation of property in a dissolution is reasonable in light of the evidence submitted, we will not disturb the finding on appeal."  *In re Marriage of Hanni*, 2000 MT 59, ¶ 22, 299 Mont. 20, ¶ 22, 997 P.2d 760, ¶ 22 (citing *In re Marriage of Robinson* (1994), 269 Mont. 293, 296, 888 P.2d 895, 897).  Here, we conclude that the District

12

Court's valuation of the home was reasonable and supported by the evidence.

¶37 (3)    Did the District Court err in designating Kim as residential custodian of Junior?

¶38  The District Court concluded that both Michael and Kim were fit and proper persons to have custody of their children.  It then concluded that it was in the best interest of the children that Kim be the residential custodial parent and that Michael have parenting time with the children as set forth in the court's parenting plan.

¶39  Michael does not contest the parenting plan.  However, he does contest the District Court's designation of Kim as the residential custodial parent for Junior.  Michael claims that there was no evidence of Junior's wishes in the record in violation of § 40-4-212(1)(b), MCA.  Michael also faults the court for failing to state a basis for its parenting decision.  Kim points out that both Michael and Kim testified as to Junior's wishes during the trial and that the court issued sufficient findings to support its parenting determinations.

¶40  We review a custody determination to determine whether the findings of fact upon which the district court relied are clearly erroneous.   Where the findings are supported by substantial credible evidence, this Court will  affirm the custody decision unless it is shown that the court committed a clear abuse of discretion.  *In re Marriage of McKenna*, 2000 MT 58, ¶ 14, 299 Mont. 13, ¶ 14, 996 P.2d 386, ¶ 14.

13

¶41 In a marriage dissolution proceeding, the district court must determine child custody matters in accordance with the best interest of the child. *See* § 40-4-212, MCA. Although the court must consider several statutory factors in determining the child's best interest pursuant to § 40-4-212, MCA, it need not make specific findings pertaining to each factor. *McKenna*, ¶ 15 (citations omitted).

¶42 Here, both parents testified regarding Junior's wishes. Kim stated that Junior said he wanted time with both Michael and her. Michael testified that Junior wanted to live with him and would like to spend one more night per week with Kim. Additionally, the court heard testimony that Kim was the primary custodial parent during the parties' separation and that Junior was more comfortable at Kim's house because he had "more to do and that's where his friends are." Upon review of the record in this case, we hold that Michael has failed to show that the District Court clearly abused its discretion in designating Kim as the residential custodian of Junior.

¶43 (4) Did the District Court err in its determination of child support?

¶44 The District Court found that child support should be calculated in compliance with the Montana Child Support Guidelines and concluded that Michael was required to pay $340 per month beginning June 2001. Michael claims that the court ordered an improper amount of child support because the guidelines mandate a payment of $118 per month.

14

¶45  In response, Kim submits an affidavit of Christine Mandiloff, the Settlement Facilitator in this case, which states that after the trial, the District Court requested that Mandiloff calculate child support in accordance with the Montana Child Support Guidelines based upon the parenting plan to be established by the court.  Mandiloff avers that the calculation resulted in a $340 per month obligation.  Kim states that the $118 figure Michael relies upon was one of two hypothetical calculations set forth prior to trial and that it is inaccurate with respect to the court's actual parenting plan.

¶46  Pursuant to § 40-4-204(3)(a), MCA, a district court must determine child support by applying the standards in this section and the uniform child support guidelines unless the application of the standards and guidelines is unjust or inappropriate.  An award based on the guidelines is presumed reasonable and adequate.  *In re Marriage of Schnell* (1995), 273 Mont. 466, 469, 905 P.2d 144, 146.  We review a district court's child support award to determine whether the court abused its discretion.  *Schnell*, 273 Mont. at 469, 905 P.2d at 146 (citations omitted).

¶47  We conclude that the District Court did not abuse its discretion in awarding child support in this case.  The record indicates that the court complied with § 40-4-204, MCA, and, in the absence of any convincing evidence to the contrary, we presume that the court's child support award is reasonable and adequate.

¶48  We affirm.

/S/ W. WILLIAM LEAPHART

15

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER