No.  92-532

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

JAMES A. ANDERSON,

Petitioner and Appellant,

and

LINDA K. ANDERSON,

Respondent and Respondent.

FILED

AUG 31 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

James C. Anderson, Pro se,
Salt Lake City, Utah

For Respondent:

Klaus D. Sitte, Montana Legal Services
Association, Missoula, Montana


Submitted on Briefs:   March 25, 1993

Decided:   August 31, 1993

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

James A. Anderson appeals from a custody decision of the District Court for the Fourth Judicial District, Missoula County. The court awarded the parties joint custody of their minor child and designated Linda K. Anderson as the primary residential custodian for two years. The court also granted James limited visitation rights. Finally, the court ordered James to pay Linda child care costs, in addition to existing child support payments. We affirm in part and reverse in part.

There are three issues on appeal.

1. Did the District Court abuse its discretion when it designated Linda as the primary residential custodian for two years?

2. Did the District Court abuse its discretion when it awarded James limited visitation rights?

3. Did the District Court err when it ordered James to pay Linda child care costs in addition to existing child support payments?

James and Linda Anderson were married in Billings, Montana, on June 16, 1976. Their only child, Sari Nicole Anderson, was born on July 31, 1987. The parties lived in Montana for approximately one and one-half years after Sari was born. During their marriage, James was employed as an equipment serviceman for Northwest Airlines. Linda worked at home, but was not employed outside the home. In February 1989, the parties separated and Linda moved with

2

Sari to Rigby, Idaho. The parties' employment situation remained unchanged after their separation.

On March 15, 1989, James filed a petition for dissolution of the parties' marriage. On February 12, 1990, the District Court entered a decree of dissolution and reserved all other issues for trial. Section 40-4-104(d), MCA, provides that a district court shall enter a decree of dissolution if:

> [T]o the extent it has jurisdiction to do so, the court has considered, approved, or made provision for child custody, the support of any child entitled to support, the maintenance of either spouse, and the disposition of property.

The District Court acted contrary to this statute when it did not make a determination about maintenance, property, child support, and child custody at the time that it dissolved the marriage. However, this is not an issue before the Court.

On June 6, 1991, following several days of hearings, the court issued detailed findings, conclusions, and a judgment regarding maintenance, property division, and the support, custody, and visitation of the parties' child, Sari.

In the June 1991 order, the court found that both James and Linda were fit parents and awarded them joint custody of Sari. The court implemented a temporary custody plan in which Sari was to alternate between living 60 days with her mother and 30 days with her father. The court ordered the alternating custody plan to commence on March 15, 1991, and continue until Sari entered school in the fall of 1992. The court instructed the parties to either submit a permanent plan for Sari's custody during her school-age

3

years by January 1992, or submit to a professional custody evaluation which would be considered by the court during further proceedings in the summer of 1992.

Additionally, in the June 1991 decree, the court awarded James reasonable visitation with Sari: James was allowed to visit with his daughter during the 1992 Christmas holidays, and on every fourth weekend of the year during the 60-day periods that Sari was living with her mother. The weekend visits were to occur in Idaho. Finally, the court ordered James to pay Linda $236 a month for the support, care, maintenance, and education of Sari.

In October 1991, James filed an affidavit with the court, informing the court that he was being forced by his employer to relocate from Missoula, Montana, to another location. This was the beginning of a series of changes in residence by James. In December 1991, James was transferred temporarily by his employer to Phoenix, Arizona. That move was followed by a brief return to Missoula and a subsequent and final move to Seattle, Washington.

On October 28, 1991, James filed a motion for an advance custody determination. On November 25, 1991, the court granted James' motion and directed Drs. Philip and Marcy Tepper Bornstein, Ph.D., licensed clinical psychologists, to conduct a comprehensive custody evaluation of James and Linda.

The Bornsteins performed the evaluation in December 1991. The assessment involved diagnostic clinical interviews and the administration of approximately eight objective psychological tests to both parents and Sari. On February 18, 1992, the Bornsteins

4

submitted their evaluation report to the District Court. They reported that James and Linda are both concerned and well-intentioned parents; and although they exhibit hostility toward one another, they both love Sari deeply. The Bornsteins determined that "a sense of stability [for Sari] with free access to both parents would clearly be in Sari's best interest."

The Bornsteins recommended that the parties have joint custody of Sari. They determined, however, that given Sari's age (four years old) and her educational needs, her adjustment would be best served by having a residential custodian. The Bornsteins recommended that Linda be Sari's residential custodian for the 1992-93 school year because she has generally played that role for Sari thus far. Further, they suggested that Sari have ample visitation with her father on all major holidays, two months of the summer, and extended weekends one time per month during the school year, to continue the development of the positive relationship that James shares with Sari.

The District Court held a hearing on June 2, 1992, to consider James' motion for an early custody determination and to address James' request for court direction regarding where he should live to best facilitate the eventual custody arrangement. Dr. Philip Bornstein testified at the hearing that James' lack of residential or employment stability was "one of the primary considerations" in making his recommendation that Linda have residential custody, but not the only consideration. Bornstein also testified that if James and Linda lived in the same community that the Bornsteins would

5

"have recommended a more shared custodial arrangement," which would allow Sari to split her residency between households.

The court ordered the June 2, 1992, hearing to continue in August 1992, and directed the parties to agree to a custody plan. The court also ordered James to have summer visitation with Sari from mid-June 1992 to mid-August 1992.

In the interim, Linda filed a motion with the District Court on July 21, 1992, to amend the findings, conclusions, and judgment entered on June 6, 1991. Specifically, Linda requested the court to modify James' child support payment to include child care payments of $320 per month, to enable Linda to attend Career Beauty College to retrain for future employment.

On August 20, 1992, the District Court resumed the June 2, 1992, hearing and addressed the issue of Sari's custody and Linda's motion to amend the decree. The parties were unable to reach an agreement regarding custody prior to the resumption of this hearing. In an order entered on August 20, 1992, the court concluded that both James and Linda were fit parents and awarded them joint custody of Sari. The court designated Linda as the primary residential custodian for the 1992-93 and 1993-94 school years. The court awarded James visitation with Sari for 60 days each summer, the 1992-93 and 1993-94 Christmas school holidays, and unlimited, but reasonable, phone calls.

Additionally, the court ordered that a custody evaluation shall be performed by Drs. Philip and Marcy Bornstein after the 1993-94 school year to determine if, ultimately, an

6

alternating-school-year custody arrangement would be in Sari's best interest.

Finally, the court determined that it is in all parties' best interests that Linda obtain marketable skills. Accordingly, the court ordered James to pay Linda up to $50 per week to cover child care costs to enable Linda to attend school. The court ordered the original child support payments of $236 per month to continue as previously ordered.

On September 21, 1992, the District Court denied a motion by James for a new trial. James appeals.

I.

Did the District Court abuse its discretion when it designated Linda as the primary residential custodian for two years?

On appeal, James argues for several reasons that the District Court abused its discretion when it ordered Linda to have residential custody of Sari for two years. First, he contends that the court failed to adequately consider the best interest factors set forth in § 40-4-212, MCA. Second, James asserts that the court's decision to award Linda residential custody of Sari for two school years was not supported by the testimonial evidence of the psychologists in this case. The Bornsteins recommended that Linda have primary custody for one school year.

Finally, James claims that Linda's past conduct has not been in Sari's best interest and that her actions have prevented Sari from bonding with her father. James contends that this lack of bonding has been detrimental to Sari, and he urges this Court to

7

remedy the situation by reversing the District Court's custody decision.

The standard of review in a child custody determination is well settled in Montana. When evaluating a district court's decision, this Court will consider whether substantial credible evidence supports the court's findings. *In re Marriage of Jensen* (1981), 192 Mont. 547, 552, 629 P.2d 765, 768. The findings will be sustained unless they are clearly erroneous. *In re Marriage of Susen* (1990), 242 Mont. 10, 13-14, 788 P.2d 332, 334. We will not substitute our judgment for that of the trier of fact. That is because the trial court is in a better position than the Supreme Court to resolve child custody issues. We will only overturn a lower court's custody decision when there is a clear showing of an abuse of discretion. *In re Marriage of Rolfe* (1985), 216 Mont. 39, 44, 699 P.2d 79, 82.

Section 40-4-212, MCA, is central to child custody determinations. This statute requires the district court to determine custody in accordance with the best interest of the child. Section 40-4-212, MCA, sets forth a list of best interest factors for the district court to consider when determining custody. Pursuant to the statute, the court shall consider the parents' wishes; the child's wishes; the child's interaction with the parents and others; the child's adjustment to home, school, and the community; the mental and physical health of all individuals

8

involved; physical abuse or threatened physical abuse; and chemical dependency.

The list of best interest factors set forth in § 40-4-212, MCA, is not exclusive. This Court has recognized that when a lower court determines whether to award joint custody, as the court did in this case, the parents' willingness to cooperate and the geographical proximity of the parents' residences should also be considered. *In re Custody and Support of B.T.S.* (1986), 219 Mont. 391, 395-96, 712 P.2d 1298, 1301.

The district court must consider all of the statutory factors listed in § 40-4-212, MCA. *In re Marriage of Converse* (1992), 252 Mont. 67, 71, 826 P.2d 937, 939. However, the trial court is not required to make specific findings regarding each and every factor listed in § 40-4-212, MCA. *Converse*, 826 P.2d at 939.

As we stated in *Converse*, 826 P.2d at 939:

The custody determination must be based on substantial evidence relating to the statutory factors and [the evidence] must be set forth explicitly in the findings. The findings should, at a minimum, set forth the "essential and determining facts upon which the District Court rested its conclusion on the custody issue." [Citations omitted].

Based on our review of the record, we conclude that the District Court acted in accordance with § 40-4-212, MCA, and considered Sari's best interest when it made its custody determination.

The record reflects that the court (1) considered the statutory factors set forth in § 40-4-212, MCA, (2) addressed

9

unlisted best interest factors, (3) made appropriate findings that are supported by substantial credible evidence, (4) set forth findings that explained the basis of the court's decision, and (5) entered an independent judgment regarding Sari's custody.

James argues that the District Court failed to consider Sari's wishes regarding custody, as is required by § 40-4-212, MCA. James is correct that § 40-4-212, MCA, requires the court to consider the child's wishes; however, his assertion that the District Court did not do so in this case is erroneous. Although the court's findings do not specifically refer to Sari's wishes regarding custody, the record reveals that the court did examine the Bornsteins' written evaluation which included evidence that they inquired into Sari's custody wishes. They found that the child enjoys time with both parents; however she is "conflicted and fearful" about their disputes and "clearly uncomfortable in her perception that she must choose between her parents." We conclude that the court did not err when it consulted the evaluators' report to ascertain the child's wishes. Moveover, we hold that the court satisfied all requirements of § 40-4-212, MCA.

We also conclude that the court did not err when it awarded Linda primary custody of Sari for two school years rather than the one year recommended by the Bornsteins.

Because of uncertainty about the location of James' residence, and the court's concern for offering Sari stability, the court implemented a longer-term plan than the evaluators had recommended. The court explained that it would award Linda primary residential

10

custody for two years; however, after such time the court would "automatically go into much more father-directed custody."

The court in this case relied on both the evaluators' assessment and the court's own independent analysis of the facts of the case to make its custody decision. The record reflects that the court's custody decision was supported by substantial credible evidence and that Sari's best interest was at all times the court's primary concern. We conclude that there was no abuse of discretion.

## II

Did the District Court abuse its discretion when it awarded James limited visitation rights?

On appeal, James contends that the District Court abused its discretion in its August 20, 1992, order when it limited his visitation with Sari to the Christmas holidays and two months in the summer. James points out that, according to the June 1991 order, he was allowed to visit with Sari on one weekend a month during the time that she was in Linda's custody. This was in addition to his having custody of Sari for one-third of the year and his right to visit Sari during the Christmas holidays and during two months of the summer.

James contends that the District Court did not act in accordance with § 40-4-217(3), MCA, when it denied him his existing right to visit Sari one weekend per month. Moreover, he contends that the court erroneously ignored the experts' suggestion that

11

James have visitation with Sari on all major holidays and extended weekends one time per month.

The effect of the District Court's August 1992 order is that Linda will have primary custody of Sari for ten months of the year; and although James will be allowed to visit with Sari during the Christmas holidays and for two months of the summer, he will not be allowed to visit his child from September through mid-December. Nor will he be allowed visitation for the six months from January through mid-June.

We conclude that the August 1992 order does restrict the visitation rights that James was awarded in the June 1991 order.

Section 40-4-217(3), MCA, which pertains to visitation, provides:

> The court may modify an order granting or denying visitation rights whenever modification would serve the best interest of the child; but the court may not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral, or emotional health . . . .

In the case of *In re Marriage of Firman* (1980), 187 Mont. 465, 610 P.2d 178, we held that the district court abused its discretion when it restricted a parent's visitation rights without first finding that the existing visitation arrangement seriously endangered the child's physical, mental, moral, or emotional health.

Similarly, the District Court in the present case did not make a finding in its August 1992 order that the existing visitation schedule, which was ordered in June 1991, seriously endangered

12

Sari's physical, mental, moral, or emotional health. In fact, the court found to the contrary when it determined that Sari's and James' visitation with one another "substantially improved their relationship."

The District Court made only one finding which served as the basis for its visitation decision in its August 1992 order. The court explained that "[b]ecause of travel problems associated with the distance between the Mother and the Father, Father's visitation should occur in blocks of time such as the Christmas holiday and summer visitation." While travel problems may be a practical consideration, they are not a basis for the court's restriction of visitation nor for its failure to comply with the requirements set forth in § 40-4-217(3), MCA.

We conclude that the District Court abused its discretion when it denied James the weekend visitation that he was allowed under the June 1991 order, particularly when the uncontroverted evidence was that such visitation, when practically possible, would be in Sari's best interest.

III

Did the District Court err when it ordered James to pay Linda child care costs in addition to existing child support payments?

On appeal, James asserts that the District Court erred when it ordered him to supplement previously ordered child support payments with a separate child care payment of up to $50 per week. He claims that such an order was redundant. James asserts that he was excessively assessed under both the old and new versions of the

13

Uniform Child Support Guidelines; and that there was no legal basis for the child care payment.

The standard of review for child support awards is whether the district court abused its discretion. *In re Marriage of Nash* (1992), 254 Mont. 231, 235, 836 P.2d 598, 601. Section 40-4-204, MCA, sets forth the factors a court must consider in setting support orders. This statute also directs the court to apply the uniform child support guidelines when determining support obligations.

Section 40-4-204(3)(a), MCA, provides in pertinent part:

> Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of social and rehabilitation services pursuant to § 40-5-209, MCA.

On June 6, 1991, the District Court ordered James to pay Linda $236 monthly for the "support, care, maintenance and education" of Sari; the court entered its order in accordance with the Uniform Child Support Guidelines in effect in June 1991. The court did not address child care at that time because Sari was not enrolled in day care. The court specifically stated in its decree that Linda was unemployed and the court reserved the right to determine support issues with regard to both parties in the future.

Linda decided that once Sari started school, she would pursue further employment training. On July 21, 1992, she requested the court to amend its June 1991 decree regarding child support to provide for child care costs so that she could return to school.

14

On August 20, 1992, the District Court granted Linda's request and ordered James to supplement the previous child support payment with a child care payment of up to $50 per week. The court acted in accordance with the child support guidelines in effect at the time of the court's original June 1991 child support decree. The guidelines in effect in 1991 provided that the court should consider child care costs a supplement to child support. Rule 46.30.1525(1) through (1)(b)(i), ARM, effective July 13, 1990.

In 1992, the child support guidelines were amended to combine child care costs with child support. Rule 46.30.1525(2), ARM, effective July 31, 1992. Under the new guidelines, when the District Court awarded child care costs of up to $50 per week, it effectively modified James' child support obligation. The amendments became effective on July 31, 1992. The effective date of the amended guidelines was after Linda's request for child care costs but before the court issued its findings, conclusions, and order regarding Linda's request.

This Court recently held that district courts are to determine child support obligations according to guidelines in effect at the time that the court makes its decision. *Paternity of W.L.* (Mont. 1993), 50 St. Rep. 751, 752.

Therefore, we conclude that the District Court erred when it did not apply the child support guidelines in effect on August 20, 1992, which was the date when the court made its decision regarding Linda's request for child care costs. We remand this case to the District Court to redetermine child support and child care costs in

15

accordance with the guidelines in effect on August 20, 1992, the date of the court's decision.

We affirm the District Court's custody decision. However, we reverse the District Court's judgment regarding visitation and child support and remand this case to the District Court for modification of its decree in conformity with this decision.

_____
                    Justice

We concur:

_____
    Chief Justice

_____

_____

_____

_____
    Justices

Justice R. C. McDonough, retired, did not participate in this opinion.

16

August 31, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

JAMES C. ANDERSON
1416 N. Mandalay Road
Salt Lake City, UT  84116

Klaus D, Sitte, Staff Attorney
Montana Legal Services Assc.
304 North Higgins Avenue
Missoula, MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _M. Tudor_
Deputy