No. 01-407

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 19

IN RE THE MARRIAGE OF

MARINA CARTER,

      Petitioner and Respondent,

  and

AUSTIN ROGER CARTER,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin, Cause No. DR-97-232,
Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

      For Appellant:

            Ronald Waterman, Gough, Shanahan, Johnson & Waterman,
Helena, Montana

      For Respondent:

            Magdalena C. Bowen, Bowen & Parker, Bozeman, Montana

Submitted on Briefs:  November 1, 2001

Decided:  February 13, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Austin Roger Carter (Roger) appeals the final parenting plan entered by the Eighteenth Judicial District Court, Gallatin County. We affirm the order of the District Court.

¶2 We address the following issues on appeal:

¶3 1. Whether the final parenting plan adopted by the District Court was in the best interest of the children and supported by substantial evidence.

¶4 2. Whether Respondent is entitled to attorney fees in defending this appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 Roger and Marina Harris (Marina) were married in October 1993 and separated in June 1997. Two children were born during the marriage. A dissolution proceeding was initiated in 1997, and a final decree, including parenting plan, was adopted by the District Court on June 1, 1999.

¶6 Eight days after the final parenting plan was approved, Marina advised Roger that she was engaged to be married and was moving with the children to Salt Lake City, Utah. Marina's move necessitated changes in the parenting plan, some of which were resolved by mediation, but others were brought before the District Court in a hearing held on April 6, 2000. At the hearing, Dr. Charles Kelly (Dr. Kelly), a psychologist who had previously performed a parenting plan evaluation in 1998 and was called by Marina, opined that it was in the children's best interest to reside with Marina and further, that traveling on alternating

2

weekends from Salt Lake City to Belgrade, Montana, to be with Roger was stressful for the children and not in the best interest of their relationship with Roger. Based on the evidence presented at the hearing, the District Court issued an interim parenting plan which provided a parenting schedule through June 2001. The interim parenting plan adopted by the District Court was date specific and provided Roger contact with the children about twice per month, for three to five days each time.

¶7 On June 27, 2000, Roger filed a Motion to Amend the Interim Order. Roger proposed a parenting plan that would provide him more contact with the children. The proposal contemplated that Roger would relocate to Utah and have custody of the children 50 percent of the time.

¶8 The District Court held a hearing on January 26, 2001, to establish a final parenting plan. After hearing evidence, the District Court denied Roger's proposed parenting plan, adopting a final parenting plan which named Marina as the primary custodial parent and providing that the children would reside with her the majority of time. Based on the assumption that Roger would reside in Utah, Roger was provided parenting time with the children every other week from Wednesday after school until Sunday morning and one night a week during the alternate week. The parenting plan also provided a schedule for holidays and summers. Roger appeals.

## STANDARD OF REVIEW

¶9 When we review a district court's findings related to the modification of a parenting plan regarding custody and visitation,

3

the standard of review is whether those findings are clearly erroneous. *In Re the Marriage of Oehlke*, 2002 MT 79, ¶ 9, 309 Mont. 254, ¶ 9, 46 P.3d 49, ¶ 9. When findings upon which a decision is predicated are not clearly erroneous, we will reverse a district court's decision regarding a parenting plan only where an abuse of discretion is "clearly demonstrated." *Oehlke*, ¶ 9.

## DISCUSSION

¶10 ***Was the final parenting plan adopted by the District Court in the best interest of the children and supported by substantial evidence?***

¶11 The district court is required to determine child custody matters in accordance with the best interest of the child. Section 40-4-212, MCA (1999), provides in relevant part:

> (1) The court shall determine the parenting plan in accordance with the best interest of the child. The court shall consider all relevant parenting factors, which may include by are not limited to:
> (a) the wishes of the child's parent or parents;
> . . .
> (c) the interaction and interrelationship of the child with the child's parent or parents and siblings and with any other person who significantly affects the child's best interest;
> (d) the child's adjustment to home, school, and community;
> (e) the mental and physical health of all individuals involved;
> . . .
> (h) continuity and stability of care[.]

Section 40-4-219, MCA (1999), provides the following direction in regard to amendment of a parenting plan:

> (1) the court may in its discretion amend a prior parenting plan if it finds, upon the basis of facts that have arisen since the prior plan or that were unknown to the court at the time of entry of the prior plan, that a change has occurred in the circumstances of the child and that the amendment is necessary to serve the best interest of the child. In determining the child's best

4

interest under this section, the court may, in addition to the criteria in 40-4-212, also consider whether:
(a) the parents agree to the amendment;
(b) the child has been integrated into the family of the petitioner with consent of the parents; ...
(d) one parent has willfully and consistently:
    (i) refused to allow the child to have any contact with the other parent; or
    (ii) attempted to frustrate or deny contact with the child by the other parent; or
(e) one parent has changed or intends to change the child's residence in a manner that significantly affects the child's contact with the other parent.

¶12 Roger argues that both parents should have frequent and continuing contact with the children, and the only way to satisfy the requirement that the best interest of the children be served is to allow each parent to have contact with the children 50 percent of the time. Roger does not maintain that 50/50 parenting contact is appropriate in all cases, but that it is appropriate in this case, because both parents agree that the other parent possesses the necessary and appropriate parenting skills to properly care for the physical and emotional needs of the children. Roger maintains that there is no evidence in the record and no justification for limiting his parenting contact with his children to an every other long weekend. Roger claims the District Court did not provide any rationale for its arbitrary decision to restrict his contact with the children.

¶13 Roger argues that the District Court was required to consider and discuss the factors set forth in §§ 40-4-212 and 40-4-219, MCA, and demonstrate in its findings that it had evaluated the facts, in light of the statute. Roger contends the District Court failed to carry out this function, offering that "the District Court merely

recited the rote findings that Roger's parenting proposal was 'not in the best interests of the children'." According to Roger, the District Court provided no indication that it even considered the statutory factors set forth above. Thus, Roger concludes that the record did not support the District Court's Order, that the District Court abused its discretion, and this Court should reverse the parenting plan.

¶14 In a marriage dissolution proceeding, the district court is required to determine child custody matters in accordance with the best interest of the child. *See* §§ 40-4-212 and 40-4-219, MCA. While a district court must consider the several statutory factors listed in § 40-4-212, MCA, we have held that the court is not required to make specific findings regarding each and every factor listed in the statute. *In Re the Marriage of McKenna*, 2000 MT 58, ¶ 15, 299 Mont. 13, ¶ 15, 996 P.2d 386, ¶ 15, and *In Re the Marriage of Anderson* (1993), 260 Mont. 246, 252, 859 P.2d 451, 455. This Court stated in *Anderson* that:

> The custody determination must be based on substantial evidence relating to the statutory factors and [the evidence] must be set forth explicitly in the findings. The findings should, at a minimum, set forth the "essential and determining facts upon which the District Court rested its conclusion on the custody issue."

*Anderson,* 260 Mont. at 252-53, 859 P.2d at 455, quoting *In Re the Marriage of Converse* (1992), 252 Mont. 67, 71, 826 P.2d 937, 939.

¶15 The parties submitted substantially different parenting plans. Marina proposed a parenting plan similar to the June 1, 1999, parenting plan, which allowed Roger contact with the children every other week for a long weekend and one night during the week he did

6

not have the children. Roger, on the other hand, submitted a parenting plan in which the children alternated between the parties, two weeks with him and then two weeks with Marina. In considering the children's adjustment to their home, school, and community, the District Court found it was important for the children to have continuity and consistency in the parenting environment, which was consistent with Dr. Kelly's report and testimony. In its findings of fact, the District Court noted that "Dr. Kelly indicates [Marina] is the primary parent and the children should not spend lengthy times away from [Marina]." Further, the District Court found that "[Roger's] proposal of rotating the children's residency every two weeks is not in the best interests of the children based on Dr. Kelly's evaluation of the children."

¶16 The District Court also found both Roger and Marina were able parents and that neither had acted neglectfully or abusively toward the children, adding that "[b]oth parties are good, loving parents and neither parent offers criticism of the other's parenting skills or abilities to parent the children." Dr. Kelly indicated there was no mental or physical problems that prevented either parent from being an effective parent. In addressing the developmental needs of the children, the District Court relied on Dr. Kelly's recommendation that the children should reside primarily with one parent and that the children should not be separated from the primary parent for lengthy periods of time. The schedule in the final parenting plan reflects this recommendation.

7

¶17   In denying Roger's proposed parenting schedule, the District Court also considered the inability of the parties to communicate well regarding the children.  The District Court entered a finding that the parties have had "obvious and continuing" communication difficulties.   Roger's  proposal  of  rotating  the  children's residence every two weeks would require more positive communication between Roger and Marina, which the District Court determined was not likely to occur.  The District Court stated:

> The  parties  have  had  a  history  of  difficult communications with each other and there continues to be animosity between the parties.  Petitioner indicates the parties do not communicate well regarding issues of the children  as  evidenced  by  Respondent's  Motion  for Contempt,  criminal  complaints  and  other  ongoing difficulties  between  the  parties.  .  .  .  [Roger's] proposal of rotating the children's residence every two weeks is not in the best interests of the children based on Dr. Kelly's evaluation of the children and the obvious and  continuing  communication  difficulty  between  the parties.

¶18   The District Court also found that both Marina and the children were very active in their church, noting "[h]owever, [Roger] is not active in the LDS Church and has not attended for over a year."

¶19   Based on our review of the record, we conclude that the District Court acted in accordance with §§ 40-4-212 and 40-4-219, MCA, and properly considered the best interest of the children when it issued its final parenting plan on March 22, 2001.  The record reflects that the District Court considered the statutory factors, made  appropriate  findings  that  are  supported  by  substantial evidence,  set  forth  findings  that  explained  the  basis  of  the

court's decision, and entered an independent judgment regarding the parenting of the children.

¶20 In addition to challenging the District Court's assessment of the children's best interest, Roger faults the District Court's consideration of, or failure to consider, certain evidence. First, relying on § 40-4-219(1)(d)(ii), MCA, which allows consideration of a parent's attempt to frustrate contact between the children and the other parent, Roger argues that the District Court failed to consider Marina's attempt to frustrate Roger's contact with the children. In 1999, eight days after a final parenting plan was adopted and approved by the District Court, Maria announced she was moving with the children from Idaho to Salt Lake City, Utah. According to Roger, this move caused him to lose 29 days of parenting. Then, in July 2000 there was an instance of custodial interference. Roger traveled to Utah to be with his children and Marina delayed the delivery of the children to Roger for two to four hours, preventing his daughter from attending a birthday party which Roger and his family had planned for her. Roger contends these actions by Marina were not given appropriate consideration by the District Court.

¶21 However, in the same order in which it adopted the parenting plan, the District Court made eleven separate findings regarding Roger's allegations of custodial interference, including the details of the two-hour delay in the parenting exchange which occurred on July 15, 2000. The District Court determined that Marina was in violation of the parenting plan by delaying the

9

exchange of the children, and found her in contempt therefor, but also indicated that no other instances of custodial interference had occurred thereafter. It is apparent from the District Court's simultaneous findings regarding the custodial interference and the parenting plan that it adequately considered the custodial interference issue and incorporated its impressions therefrom into the parenting plan, as the court's order included an assessment of the parties' ability to communicate with each other in regard to the children.

¶22 Roger next claims that the District Court erred by relying on the evaluation and report of Dr. Kelly. Dr. Kelly had testified during a hearing on an interim parenting plan in April 2000 that his earlier recommendations should be re-evaluated in light of Marina's custodial interference. However, this re-evaluation did not occur. Therefore, Roger contends that, without a re-evaluation, Dr. Kelly's opinion should be removed from the District Court's consideration. Roger further contends that the District Court should not have relied on Dr. Kelly's report because it failed to consider a parenting situation in which he and Marina resided in the same community, which Roger's proposal had contemplated.

¶23 Dr. Kelly generally supported restriction of Roger's parenting time with the children, believing that the long distance travel between Salt Lake City and Belgrade was not in the children's best interest. However, as Roger correctly points out, by the time of the hearing on the final plan, the issue of the children traveling

between Salt Lake City and Belgrade was removed by Roger's proposal to relocate to Utah.

¶24 Nonetheless, we do not conclude that the District Court erred in considering Dr. Kelly's testimony. Although Dr. Kelly was a witness for Marina, Roger had every opportunity to consult with Dr. Kelly after Dr. Kelly's testimony in April 2000 to obtain a re-evaluation or additional information in response to the proposed change in Roger's residence, but he did not do so. Roger also had the opportunity to consult another expert to refute Dr. Kelly's recommendations and support his proposed parenting plan, but, again, he did not do so. Under these circumstances the District Court was entitled to rely on Dr. Kelly's evaluation and recommendations to the extent they were still relevant, which the District Court did.

¶25 Further, the failure of Dr. Kelly's report to consider the proposed change in Roger's residence does not affect the District Court's findings that Marina was the primary parent, that the children should not spend lengthy periods away from her, that Marina and the children were both actively involved with their church and Roger was not, and that the parties did not communicate well regarding the children, which were the bases of the District Court's conclusion that Roger's plan was not in the best interest of the children.

¶26 The District Court considered the relevant evidence presented, including the testimony of the parents and the expert, and reached an independent decision on the best interest of the children. The

11

District Court crafted a parenting plan in which the children continued to have primary time with Marina with Roger having contact Wednesday evening through Sunday morning every other week, time during the alternating week, as well as holidays and summer. We determine that the District Court's conclusion that its final parenting plan was in the best interest of the children is supported by substantial evidence and not an abuse of discretion.

¶27 **_Is Respondent entitled to attorney fees in defending this appeal?_**

¶28 Marina asserts that we should award her attorney fees and costs pursuant to Rule 32, M.R.App.P., on the grounds that Roger's appeal was taken without substantial or reasonable grounds. Rule 32, M.R.App.P., provides:

> If the supreme court is satisfied from the record and the presentation of the appeal in a civil case that the same was taken without substantial or reasonable grounds, such damages may be assessed on determination thereof as under the circumstances are deemed proper.

As a general rule, this Court will not impose sanctions pursuant to Rule 32, M.R.App.P., unless the appeal is entirely unfounded and intended to cause delay, or unless counsel's actions otherwise constitute an abuse of the judicial system. *In Re the Marriage of Snow*, 2002 MT 143, ¶ 31, 310 Mont. 260, ¶ 31, 49 P.3d 610, ¶ 31. In this case, even though we did not rule in Roger's favor, his appeal was not entirely unfounded or intended to cause delay, and did not constitute an abuse of the judicial system. Accordingly, we do not award Marina her attorney fees and costs on appeal.

¶29 Affirmed.

                                                   /S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER