No. 04-165

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 307

IN RE THE PATERNITY OF C.T.E.-H.,
a Minor Child

S.H.,

        Petitioner and Respondent,

    v.

T.M.E., a/k/a T.S.,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DF 14-2003-27.
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Miriam G. Luse, Attorney at Law, Helena, Montana

    For Respondent:

        Mark Westveer, Hubble, Ridgeway, Unmack & Westveer,
Stanford, Montana

        Kris Birdwell, Stogsdill Law Office, Lewistown, Montana

Submitted on Briefs:  August 25, 2004

Decided:  November 9, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 The mother (T.M.E.) appeals from the Order entered by the Tenth Judicial District Court, Fergus County, designating the father (S.H.) as the primary residential custodian of the child (C.T.E.). We affirm.

¶2 We address the following issues on appeal:

¶3 1. Was the District Court's change of primary custody between the Interim and Final Parenting Plans supported by substantial evidence?

¶4 2. Did the District Court abuse its discretion in determining that the child's best interests were served by granting primary custody to the father?

¶5 3. Did the District Court abuse its discretion in denying T.M.E.'s Rules 52, 59 and 60 post-trial motions for relief?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 In April 2002, S.H. and T.M.E. met while volunteering at the Envirothon in Lewistown, Montana. S.H. is 51 years old, and T.M.E. is 39 years old. Soon after meeting, S.H. and T.M.E. became romantically involved which resulted in pregnancy, and in July 2002, they moved in together near Lewistown. S.H. and T.M.E. lived together for approximately two months until their relationship began to deteriorate, and T.M.E. moved out. On November 4, 2002, S.H. and T.M.E. had a conversation whereby T.M.E. told S.H. that she did not want him to be involved in the child's life.

¶7 On January 24, 2003, T.M.E. gave birth by Caesarian section to C.T.E., who was ten weeks premature. C.T.E. spent approximately two months in the intensive postnatal care at

2

a hospital in Billings, Montana, located 130 miles from S.H.'s residence in Lewistown. On the same day, and despite the emotional and physical stress from the birth, T.M.E. called Kenneth Snooks (Snooks) to inform him of the birth.

¶8 Snooks and T.M.E. shared a residence prior to and after her relationship with S.H. T.M.E. asked Snooks to not disclose news of the birth and hospitalization to S.H. even though she informed other individuals of the event. Subsequent to the birth, T.M.E. returned to Snooks's residence with C.T.E.

¶9 On February 23, 2003, S.H. learned of C.T.E.'s birth after speaking with one of T.M.E.'s work colleagues. Consequently, S.H. telephoned various hospitals, among other locations, in an attempt to determine the whereabouts and well being of C.T.E. S.H. had difficulty in obtaining information due to privacy requirements and requests made by T.M.E. to friends and colleagues to not discuss the birth with S.H. At this time, T.M.E. was aware that S.H. was seeking information about C.T.E., but made no efforts to reveal her location to him.

¶10 On February 28, 2003, S.H. filed a petition to determine paternity because T.M.E. initially disputed it. On the same day, the District Court ordered the appointment of Kris Birdwell as guardian *ad litem* for C.T.E.

¶11 On April 24, 2003, the District Court concluded that, based on the DNA tests, S.H. was the biological father of C.T.E. In addition, it issued an Interim Parenting Plan (IPP) whereby S.H. was allowed to see C.T.E. for three, two-hour weekday visits, and was awarded a six-hour Saturday visit as well. Subsequently, both parties submitted motions to

3

the District Court asking it to adopt their respective proposed Parenting Plans. On September 11, 2003, the District Court held a hearing on the motions to determine the Parenting Plan.

¶12 On November 5, 2003, the District Court issued an order granting S.H. primary residential custody of C.T.E. to commence on July 1, 2004, with visitation rights granted to T.M.E. The District Court found that T.M.E. was a mature person, and a diligent and caring mother. Similarly, it found S.H. to be credible, mature, intelligent and that he too was a concerned and caring parent.

¶13 On November 28, 2003, T.M.E. filed various motions for relief from the District Court's order pursuant to Rules 52, 59, and 60 of the Montana Rules of Civil Procedure, asking the District Court, among other requests, to set aside certain findings of fact to conform to actual testimony. On January 13, 2004, the District Court denied all of T.M.E.'s motions.

¶14 On February 11, 2004, T.M.E. filed a notice of appeal, appealing both the November 5, 2003, order, and the January 13, 2004, order.

**STANDARD OF REVIEW**

¶15 When reviewing a district court's custody decision, we review its findings of fact to determine whether they are clearly erroneous. *McDermott-Yeargin v. McDermott*, 2003 MT 283, ¶ 9, 318 Mont. 13, ¶ 9, 79 P.3d 245, ¶ 9. A finding of fact is clearly erroneous if it is not supported by substantial evidence; if the district court misapprehended the effect of the evidence; or if, after reviewing the record, this Court is left with a definite and firm conviction that the district court made a mistake. *Matter of T.J.H.,* 2003 MT 352, ¶ 7, 318

4

Mont. 528, ¶ 7, 81 P.3d 504, ¶ 7 (citing *Matter of K.S.,* 2003 MT 212, ¶ 8, 317 Mont. 88, ¶ 8, 75 P.3d 325, ¶ 8).

¶16    We presume a district court's ruling is correct, and will not overturn the court in child custody matters unless we determine that there has been a clear abuse of discretion. *In re Marriage of Hedges*, 2002 MT 204, ¶ 19, 311 Mont. 230, ¶ 19, 53 P.3d 1273, ¶ 19. The standard for an abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *In re Marriage Gallagher,* 2003 MT 124, ¶ 32, 316 Mont. 531, ¶ 32, 77 P.3d 550, ¶ 32 (citing *In re Marriage of Hayes,* 2002 MT 281, ¶ 13, 312 Mont. 440, ¶ 13, 60 P.3d 431, ¶ 13).

## DISCUSSION

¶17    **Was the District Court's change of primary custody between the Interim and Final Parenting Plans supported by substantial evidence?**

¶18    We recognize the difficult position in which district courts are placed regarding child custody cases and therefore presume the District Court's decision is correct since it is in a better position than this Court to resolve such cases. *Hedges*, ¶ 17. In the case at hand, the District Court noted it made its decision with a "heavy heart," which further illustrates why we presume the District Court's decision is correct in light of the intensely personal family matters at issue and, therefore, "we will uphold it unless the Court's findings of fact are clearly erroneous, or a clear abuse of discretion is shown." *Hedges,* ¶ 17 (citing *In re Custody of Arneson-Nelson*, 2001 MT 242, ¶ 22, 307 Mont. 60, ¶ 22, 36 P.3d 874, ¶ 22).

¶19   T.M.E. contends the District Court lacked substantial evidence to support the change in custody following the IPP, and challenges the District Court's conclusion that it changed custody based on its "grave concern" that T.M.E.'s pattern of excluding S.H. from the child would be replicated if it granted T.M.E. primary residential custody of C.T.E.

¶20   T.M.E. alleges that the evidence offered by S.H. relates only to acts that occurred prior to the issuance of the IPP and that S.H. cited to no new instances of rebuffed attempts to contact, missed visits, custodial interference or other acts of exclusion that would justify the change of custody.  T.M.E. argues that, according to our holding in *Hedges,* if a Final Parenting Plan (FPP) radically departs from the IPP, evidence must be presented to support the departure, and that a district court cannot make "fundamentally different" rulings based on essentially the same evidence.  Thus, T.M.E. claims that no new evidence was presented to justify the change of custody following the IPP.

¶21   T.M.E. asserts the evidence shows she facilitated S.H.'s interaction with C.T.E. by providing a disproportionate share of C.T.E.'s transportation to S.H., worked with S.H. in teaching C.T.E. how to take a bottle, discussed day care options, and agreed to change the visitation schedule to accommodate S.H.'s personal and professional needs.  T.M.E. notes that the District Court concluded that S.H. had "frequent and continuous" contact with C.T.E. after the IPP was ordered as seemed appropriate, given C.T.E.'s age and health.  Based on this evidence, T.M.E. claims that the District Court lacked substantial evidence to maintain its "grave concern" that she would exclude S.H. and therefore the change of custody following the IPP was an abuse of the District Court's discretion.

6

¶22 S.H. responds by arguing that the District Court's decision to change the primary residential custodian is supported by substantial evidence. In the District Court's findings of fact, it concluded that during a November 4, 2002, telephone conversation, T.M.E. clearly communicated to S.H. that she would ensure he was not part of the child's life. T.M.E.'s desire to exclude S.H. was subsequently corroborated during a couple's counseling session attended by both parties. In addition, Tandy Tomt, a co-worker of T.M.E., testified she overheard T.M.E. on different occasions discussing various methods to exclude S.H. from C.T.E.'s life.

¶23 S.H. also notes that T.M.E. actively concealed C.T.E.'s birth from him which was corroborated by two other witnesses, including the guardian *ad litem*, who testified that it bothered him that T.M.E. seemed to "run away and hide." S.H. points to the District Court's findings of fact, whereby the District Court found it noteworthy that while T.M.E. neglected to inform S.H. of the child's birth, she informed several of her acquaintances. Even after S.H. learned of the birth, there is evidence that T.M.E. obfuscated his efforts to locate C.T.E. by failing to list S.H.'s name on the birth certificate and by failing to make her whereabouts known. Thus, S.H. contends the District Court had substantial evidence to support its "grave concern" regarding the replication of T.M.E.'s pattern of exclusion thereby justifying a change in custody following the IPP.

¶24 This Court has held that a custody determination must be based on substantial evidence relating to the statutory factors and the evidence must be set forth explicitly in the findings. *In re Marriage of Carter,* 2003 MT 19, ¶ 14, 314 Mont. 84, ¶ 14, 63 P.3d 1124,

7

¶ 14 (citing *In re Marriage of Anderson* (1993), 260 Mont. 246, 252-53, 859 P.2d 451, 455). The findings should, at a minimum, set forth the "essential and determining facts upon which the District Court rest[s] its conclusion on the custody issue." *Carter*, ¶ 14. In particular application here, we held in *Hedges*, that the correct standard to be applied when first adopting a FPP, even one that departs from an IPP, is whether the FPP is in the "best interest of the child" pursuant to § 40-4-212, MCA. *Hedges*, ¶ 18. We concluded that § 40-4-219, MCA, applies to modifications of previously issued FPPs and is not applicable to modifications of IPPs. *Hedges*, ¶ 18. In the case at hand, there was no FPP modification, and therefore the District Court needed only to determine whether the FPP was in the "best interest of the child." *Hedges*, ¶ 18. Finally, we held that the court must determine the child's best interest "based upon the evidence presented." *Hedges*, ¶ 19.

¶25    T.M.E.'s assertion that S.H. must produce *new* evidence of acts of exclusion that occurred after the IPP is misplaced. *Hedges* did not hold that a district court could only consider evidence which arose following the adoption of the IPP, to the exclusion of evidence of circumstances beforehand. The holding in *Hedges*, which reversed the district court's modification of custody in the FPP, was premised on a lack of any evidence whatsoever: "we see nothing in the evidence presented that supports an FPP so fundamentally different from the interim plan and the proposed plans of the parties." *Hedges*, ¶ 19. Unlike *Hedges*, the District Court pointed to evidence which supported its determination that a change of custody was in the best interests of C.T.E.

¶26 The District Court concluded, in addition to the facts regarding T.M.E.'s exclusion of S.H., that T.M.E.'s contentions of fear and trepidation regarding the safety of C.T.E. were not credible and that her testimony regarding S.H. allegedly making physical threats against her, were completely unsubstantiated. Furthermore, the District Court highlighted the fact that on the day of the birth, T.M.E. had the strength to call and inform an individual with whom she had, at best, a casual relationship, and thereafter went out of her way to conceal the birth from S.H. Such concealment attempts were corroborated by the guardian *ad litem* who testified that T.M.E. continued with attempts to prevent contact between S.H. and the child.

¶27 The District Court also found that T.M.E. initially disputed paternity, and even after paternity was determined, inexplicably asked S.H., "why do you always call him your son?" In addition, T.M.E.'s desire to exclude S.H. was furthered evidenced when the early visitation sessions revealed behaviors by T.M.E. that intended to cut S.H.'s visitation short and exert control over his contact with C.T.E.

¶28 By contrast, the District Court explicitly found that there was no indication S.H. has or would engage in any behavior that would preclude T.M.E. from being involved in the child's life. Moreover, despite T.M.E.'s contentions that she felt threatened by S.H., the District Court determined that S.H. appeared to be an emotionally stable and mature adult.

¶29 In light of the evidence set forth in the findings of fact, we hold the District Court had substantial evidence to conclude that T.M.E.'s behavior throughout the matter was "troubling" and "cast a shadow of implication" regarding the interplay of the relevant factors

9

concerning the best interests of C.T.E. Moreover, we hold that the District Court's determination to change the primary residential custodian following the IPP was properly supported based on its grave concern as to the probable continuance of T.M.E.'s pattern of exclusion.

¶30 T.M.E. also contends she should remain the primary custodial parent because the District Court concluded that one of the best interests factors, continuity and stability, set forth in § 40-4-212(1)(h), MCA, was satisfied while C.T.E. was in her custody. T.M.E. asserts that our holding in *In re Marriage of Robison*, 2002 MT 207, 311 Mont. 246, 53 P.3d 1279, is highly relevant as it pertains to the District Court's conclusion that C.T.E. enjoyed a continuity and stability of care.

¶31 The District Court, even though it determined that the continuity and stability of care would be good in either household, concluded it was critical that T.M.E. be designated as the primary residential custodian only for the first eighteen months of C.T.E.'s life for breast-feeding purposes, and further concluded that S.H. would be the more appropriate custodian thereafter. *Robison* is not inapposite to that conclusion because it involved an amendment to a FFP, whereas the instant case involves an amendment to an IPP. However, even assuming *Robison* was applicable, § 40-4-212(1), MCA, allows a court to consider "**all** relevant parenting factors, which may include but are not limited to" the listed factors, of which "continuity and stability of care" is merely a single, non-exclusive, factor. (Emphasis added.) Thus, we hold that the District Court's designation of S.H. as the primary residential

custodian in the FPP, based upon the factors listed under § 40-4-212, MCA, was supported by substantial evidence.

¶32 T.M.E. also contends in her Reply Brief that, according to Rule 23(b), M.R.App.P., and our holding in *In re Custody of Krause*, 2001 MT 37, 304 Mont. 202, 19 P.3d 811, the arguments presented by S.H. lack citations to the authorities, and references to statutes or pages of the record relied on, and therefore should not be considered. *Krause*, ¶32. In *Krause*, we refused to address an issue raised by the appellant because he provided a contention with no authority. *Krause*, ¶31. However, in the present case, S.H. not only included appropriate references to various portions of the record, but also cites to and distinguishes the appropriate legal authorities and, therefore, we conclude S.H.'s arguments are properly considered.

¶33 **Did the District Court abuse its discretion in determining that the child's best interests were served by granting primary custody to the father?**

¶34 A district court is required to determine child custody matters in accordance with the best interests of the child, taking into consideration a variety of statutory factors including, but not limited to, the parents' wishes, the interaction and interrelationship of the child with the child's parents, continuity and stability of care, and whether the child has frequent and continuing contact with both parents. Section 40-4-212, MCA; *In re Marriage of Fishbaugh,* 2002 MT 175, ¶ 20, 310 Mont. 519, ¶ 20, 52 P.3d 395, ¶ 20. While a district court must consider the factors enumerated in § 40-4-212(1), MCA, it need not make specific findings relating to each. *Fishbaugh*, ¶ 20.

¶35	T.M.E. argues the FPP is not grounded in the developmental needs of C.T.E. and is therefore not in C.T.E.'s best interest. T.M.E. contends that, in accordance with the Tenth Judicial District Visitation Guidelines, infants and toddlers have a great need for continuous contact with the primary caretaker who provides a sense of security, nurturing and predictability. T.M.E. claims that the Visitation Guidelines were almost totally ignored and that as a result the FPP is not in the best interests of C.T.E.

¶36	The District Court specifically accounted for the developmental needs of C.T.E. when it concluded it would be within C.T.E.'s best interests for T.M.E to maintain primary residential custody during the first eighteen months for breast-feeding purposes. However, the District Court noted that the developmental needs of the child after the first eighteen months changed, requiring consideration of factors that promote emotional security, such as stability, uniformity of schedule, and consistency, and that these needs were not dependent upon residential custody with either particular parent but, rather, whichever parent could best meet these needs. Therefore, we conclude that the District Court properly considered the child's developmental needs in determining the child's best interest, and that the factual findings made in support thereof were not clearly erroneous.

¶37	T.M.E. also asserts that the District Court improperly provided testimony in violation of Rule 605, M.R.Evid., which stipulates that a judge presiding at a trial may not testify in that trial as a witness. T.M.E. claims the District Court's use of "personal experience and knowledge" acts as an admission of non-expert opinion testimony constituting reversible

error according to our holding in *In re Estate of Smith* (1988), 230 Mont. 140, 148, 749 P.2d 512, 517.

¶38    In *Smith*, the district court, over the defendant's objection, allowed numerous lay witnesses to express their opinions as to the ultimate jury question. *In re Estate of Smith*, 230 Mont. at 148, 749 P.2d at 517. We concluded the district court erred when it allowed non-experts to testify as to the ultimate issue. Here, the judge did not testify as a witness, or give testimony as to the ultimate issue of determining which parent should be granted primary residential custody. Thus, *Smith* is not applicable.

¶39    Similarly, T.M.E. suggests that if a District Court has no supporting evidence other than its own "personal impressions," such statements should be stricken from the record, citing *In re Marriage of Nevin* (1997), 284 Mont. 468, 471, 945 P.2d 58, 61. However, unlike *Nevin*, none of the District Court's findings of fact were based on its own personal impressions and thus, *Nevin* is not applicable. Although the District Court mentioned its own impressions in devising the FPP, this did not interfere with its factual findings and we find no error.

¶40    T.M.E. also contends the District Court erred because it did not conclude that S.H.'s failure to pay the birth-related costs was not in C.T.E.'s best interests pursuant to § 40-4-212(j), MCA, which stipulates if a parent has knowingly failed to pay birth-related costs that the parent is otherwise able to pay, it is not in the child's best interest. Similarly, T.M.E. asserts the District Court failed to present findings that granting S.H.'s request to commence

13

child support payments on April 24, 2003, instead of February 1, 2003, was in C.T.E.'s best interest.

¶41 The District Court held that the § 40-4-212, MCA, factor regarding birth related costs is inapplicable to this case due to T.M.E.'s deliberate refusal to inform S.H. of the birth, which prevented S.H. from including the child on his insurance within the 30-day notification period. Regarding child support, the District Court determined that S.H. should only pay support dating back to the determination of paternity, and not when the child was born. Similar to our analysis regarding the "continuity and stability" factor of § 40-4-212, MCA, child support payments and birth related costs are non-exclusive factors to be considered with all factors when determining the best interests of the child. In the context of this case, we conclude that the District Court did not abuse its discretion in determining that a change of custody was in the child's best interest.

¶42 **Did the District Court abuse its discretion in denying T.M.E.'s Rule 52, 59 and 60 post-trial motions for relief?**

¶43 T.M.E. filed Rules 52, 59, and 60 post-trial motions for relief asking the District Court to amend its findings of fact and conclusions of law. Because the District Court denied these motions, T.M.E. contends the District Court did not carefully consider the evidence supporting C.T.E.'s motions and therefore abused its discretion.

¶44 The standard for an abuse of discretion is "whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting

in substantial injustice." *In re Marriage of Hayes*, 2002 MT 281, ¶ 13, 312 Mont. 440, ¶ 13, 60 P.3d 431, ¶ 13. The District Court found it necessary to address the full contentions of T.M.E. and because T.M.E. had not supplied a transcript in support of her motions, obtained its own record of the transcript to aid in its rulings. Thus, in its January 13, 2004, Order, the District Court methodically addressed all of T.M.E.'s requests, giving a thorough analysis as to each, even though it concluded that T.M.E.'s contentions were conclusory and unsupported and would normally be dismissed out of hand. The District Court thus engaged in an extraordinary review of each of T.M.E.'s contentions, and T.M.E.'s argument that the District Court did not carefully consider the evidence is without merit.

¶45 T.M.E. claims the District Court improperly denied her Rule 7, M.R.App.P., motion for a stay pending appeal and her supplemental motions under Rule 60(b), M.R.Civ.P., regarding newly discovered evidence and other reasons justifying relief from operation of the judgment. Rule 60(b)(6) applies when the movant demonstrates each of the following elements: (1) extraordinary circumstances; (2) the movant acted to set aside the judgment within a reasonable period of time; and (3) the movant was blameless. *Bahm v. Southworth*, 2000 MT 244, ¶ 14, 301 Mont. 434, ¶ 14, 10 P.3d 99, ¶ 14.

¶46 The District Court determined that the Rule 60(b) motion is unsupportable and frivolous because it was filed after T.M.E. filed a notice of appeal. This Court has held that it is "axiomatic that when notice of appeal has been filed, jurisdiction passes from the district court and vests in the Supreme Court." *Powder River County v. State,* 2002 MT 259, ¶ 27, 312 Mont. 198, ¶ 27, 60 P.3d 357, ¶ 27. Therefore, it was not an "abuse of discretion for the

15

District Court to subsequently deny the . . . Rule 60(b) Motion." *Lewistown Propane v. Moncur*, 2003 MT 368, ¶ 13, 319 Mont. 105, ¶ 13, 82 P.3d 896, ¶ 13.

¶47 Rule 7, M.R.App.P., provides in pertinent part that "the court in its discretion may grant said stay for such period of time and under such conditions as the court deems proper . . . ." The District Court denied T.M.E.'s Rule 7, M.R.App.P., motion because it maintained that the very transfer of custody was central to many of the its findings of fact and that a stay would therefore be inappropriate because it would act to rescind the core aspects of the District Court's order regarding the best interests of the child. However, this issue is moot because, in accordance with this opinion, the case is resolved. Moreover, the denial of the stay is not an appealable issue under Rule 1, M.R.App.P.

¶48 Affirmed.

/S/ JIM RICE

We concur:
/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER

Justice W. William Leaphart dissenting.

¶49 I dissent.

¶50 The District Court concluded that a change of custody was warranted because T.M.E.'s behavior prior to the IPP caused the court "grave concern" and "cast a shadow of implication" regarding the interplay of the relevant factors regarding the best interests of

17

C.T.E.  In my view, the District Court's remedy (change of custody) was too harsh for the perceived problem (pattern of exclusion). Given that the pattern of exclusion which concerned the court was not evidenced between the time of the IPP and the FPP and occurred before any court-ordered plan was in effect, it would clearly have been in C.T.E.'s best interest that C.T.E. remain in custody of the mother, subject to strict requirements as to S.H.'s visitation rights.  If T.M.E. failed to honor the schedule and the court's "concerns" come to fruition, then the court would be justified in invoking its contempt powers and/or considering a change of custody.  It was premature to take that drastic step based purely on "concerns."  I would conclude that the District Court abused its discretion.

/S/ W. WILLIAM LEAPHART