No. 04-457

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 245N

IN THE MATTER OF THE CUSTODY
OF AND PATERNITY OF N.S.L.,

       A Minor Child.

M.M.,

       Petitioner and Appellant,

    v.

T.L., f/k/a T.N.,

       Respondent and Respondent.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DF 2002-0017,
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          George T. Radovich, Attorney at Law, Billings, Montana

       For Respondent:

          Jill Deann LaRance and Nancy G. Schwartz, LaRance,
Syth & Schwartz, P.C., Billings, Montana
Assistant Attorney General, Helena, Montana

Submitted on Briefs:  January 4, 2005

Decided:  October 12, 2005

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 M.M. (Father) appeals from the findings of fact, conclusions of law and order entered in the Thirteenth Judicial District Court, Yellowstone County, implementing a Final Parenting Plan and providing for child support. We affirm. Although the parties frame the issues differently, we state the dispositive issues as follows:

¶3 Did the District Court commit clear error, enter incorrect conclusions of law or abuse its discretion in its order implementing the Final Parenting Plan?

¶4 Is Mother entitled to attorney fees on appeal pursuant to Rule 32, M.R.App.P.?

BACKGROUND

¶5 N.S.L. was born in December 2001 to M.M. (Father) and T.L. (Mother). Father and Mother were never married. Since birth, N.S.L. has primarily lived with Mother in Billings, but Father, who lives near Roundup, about an hour's drive from Billings, has generally taken care of N.S.L. during the day while Mother works, either by keeping N.S.L. in Billings or taking her to his home for the day.

¶6 Father initiated this proceeding by filing a petition to determine paternity, custody and support of N.S.L. Paternity was conceded by Mother, and, after a hearing, the District Court

issued its findings of fact, conclusions of law, and a Final Parenting Plan, on January 23, 2004. Under the plan, Father's daytime care of N.S.L. during Mother's work days was continued, and Father was granted overnight visitation with N.S.L. at his home one night per week, eventually increasing to two nights per week. The plan provides that when N.S.L. reaches four years old, Mother will enroll her in preschool, and both parents will be responsible for ensuring attendance. However, once the child reaches the kindergarten age of five, Father's allotted time with N.S.L. will be reduced to alternating weekends, from Friday afternoon to Sunday afternoon.

¶7 Since he sustained a brain injury in 1995, Father has suffered from epilepsy, and his symptoms include simple partial seizures, headaches, nausea, mood changes and dizziness. Father has been receiving disability payments and does not work. The District Court found that limiting the stress experienced by Father was a concern. Testimony was offered by a family relations specialist who had investigated the family to the effect that limiting the number of overnight visits between N.S.L. and Father would further that goal.

¶8 The District Court also noted that Mother claimed that Father had been abusive of her, specifically by threatening her and her friend with a rifle, chasing her with his vehicle, and blocking her car in her driveway with his vehicle. These latter two events were done while N.S.L. was in one of the cars.

¶9 On February 18, 2004, Father filed a motion for a new trial in which he sought to amend the Final Parenting Plan or, in the alternative, for leave to present additional evidence. The District Court denied the motion in an order issued on April 8, 2004. Father appeals.

STANDARD OF REVIEW

¶10　This Court presumes "a district court's ruling is correct, and will not overturn the court in child custody matters unless we determine that there has been a clear abuse of discretion." *In re Paternity of C.T.E.-H.*, 2004 MT 307, ¶ 16, 323 Mont. 498, ¶ 16, 101 P.3d 254, ¶ 16. "The standard for an abuse of discretion is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *C.T.E.-H.*, ¶ 16 (quotation marks omitted).

¶11　"Our standard of review of findings of fact on the modification of a parenting plan regarding custody and visitation is that the district court's findings will be sustained unless they are clearly erroneous." *In re Marriage of Nies and Cooper*, 2003 MT 100, ¶ 10, 315 Mont. 260, ¶ 10, 68 P.3d 697, ¶ 10. "A finding of fact is clearly erroneous if substantial evidence does not support it, if the district court misapprehended the effect of the evidence, or if, after reviewing the record, this Court is left with a firm conviction that a mistake has been made." *In re Guardianship and Conservatorship of Saylor*, 2005 MT 236, ¶ 10,  328 Mont. 415, ¶ 10, __ P.3d __, ¶ 10.

¶12　This Court reviews a district court's conclusions of law for correctness. *Kirchner v. State, Dept. of Pub. Health and Human Servs.*, 2005 MT 202, ¶ 10, 328 Mont. 203, ¶ 10, 119 P.3d 82, ¶ 10.

DISCUSSION

¶13　**Did the District Court commit clear error, enter incorrect conclusions of law or abuse its discretion in its order implementing the Final Parenting Plan?**

¶14 Father argues that the District Court abused its discretion in crafting the Final Parenting Plan. Father contends that the plan imposes burdensome costs on him, needlessly requires him and the child to spend too much time traveling back and forth from his house to Billings, and that the "overall effect of the Court's decision is to drive the Father from the child's life, even though he has performed as a Father in an exemplary manner." Of particular concern to Father is the provision that once N.S.L. is in kindergarten Father will only be able to see her every other weekend, as opposed to weekday visitation he currently enjoys.

¶15 We first note that Father does not generally challenge the District Court's findings of fact as being clearly erroneous.[1] The District Court received testimony regarding Father's physical and emotional difficulties, the possibility Father had been abusive toward Mother, and a family relations specialist's recommendation that overnight visits with Father be limited. This evidence formed the basis of the District Court's factual findings, which remain intact on appeal. We have recognized that district courts have significant discretion in drafting parenting plans, *see C.T.E.-H.*, ¶ 18, and given the evidence before it, we cannot conclude that the District Court acted arbitrarily or exceeded the bounds of reason. The District Court's findings were supported by substantial evidence, and it made no errors of law. While we sympathize with Father's concern over the substantial decrease in visitation

---

[1]Father points out that in Finding of Fact 6A the District Court stated that N.S.L. has not spent a night away from Mother, which contradicts Mother's testimony. Even if we were to hold this was an erroneous finding, it would not, in our view, affect the outcome.

time when N.S.L. reaches kindergarten age, we cannot conclude, given the factual findings, that the District Court abused its discretion in drafting the parenting plan.

¶16 **Is Mother entitled to attorney fees on appeal pursuant to Rule 32, M.R.App.P.?**

¶17 We do not find that the appeal by Father was taken without substantial or reasonable grounds, and we therefore deny the respondent's request for attorney fees.

¶18 Affirmed.


/S/ JIM RICE


We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER